**IT IS ORDERED as set forth below:**



Date: July 21, 2017

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER: |
| **LAUREN MICHELLE O'BRIEN**, | **15-72076-PMB** |
| Debtor. | CHAPTER 7 |
| **LAUREN MICHELLE O'BRIEN,** | |
| Movant, | |
| v. | |
| **MATTHEW SKUBIC,** **AISHA BLANCHARD COLLINS,** **BLANCHARD COLLINS LAW FIRM, LLC,** **and ELIZABETH ANNE ("LIZ") SHEPHERD,** **d/b/a TRIPLE THREAT LEGAL**, | CONTESTED MATTER |
| Respondents. | |

1

**ORDER ON SKUBIC DEFENSE TO DEBTOR'S MOTION FOR
CONTEMPT AND SANCTIONS FOR VIOLATING THE AUTOMATIC STAY,
DENYING SKUBIC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY,
AND SCHEDULING STATUS CONFERENCE ON REMAINING ISSUES**

Before the Court is the *Motion for Contempt and for Violation of the Automatic Stay*, filed by the Debtor on November 25, 2015 (Docket No. 8), and amended by the *Amended Motion for Contempt and for Violation of the Automatic Stay*, filed on December 16, 2015 (Docket No. 19) (collectively, the "Sanctions Motion"), and the responsive pleadings thereto described in the next paragraph. Also before the Court is the *Amended Motion for Relief from Stay* filed by Matthew Skubic ("Skubic") on January 4, 2016 (Docket No. 23) (the "Motion for Relief from Stay").

Aisha Blanchard Collins ("Collins"), the Blanchard Collins Law Firm, LLC (the "Collins Law Firm"), and Elizabeth Anne ("Liz") Shepherd ("Shepherd"), d/b/a Triple Threat Legal filed *Respondent's Memorandum of Law in Opposition to Debtors's[sic] Motion for Contempt and Sanctions for Violation of the Automatic Stay* on December 12, 2015 (Docket No. 16)(the "Initial Response"). Skubic, Collins, the Collins Law Firm and Shephard (collectively, the "Respondents") filed the *Amended Response by Defendants Matthew Skubic, Aisha Blanchard Collins, Blanchard Collins Law Firm, LLC, and Elizabeth Ann Shepherd in Opposition to Debtor's Motion for Contempt and Sanctions for Violation of the Automatic Stay* on December 31, 2015 (Docket No. 22) (the "Amended Response"; the Initial Response and Amended Response, collectively, the "Response").

In the Sanctions Motion, the Debtor seeks sanctions under 11 U.S.C. § 362(k) against the Respondents for the post-petition service on the Debtor of certain pleadings related to, among other things, the collection of a pre-petition award for attorneys' fees. The Respondents argue

that collection of the attorneys' fees was excepted from the automatic stay and therefore sanctions are not warranted. Skubic also requests in the Motion for Relief From Stay that the Court confirm that no stay is in place *vis a vis* the collection for the prepetition attorneys' fees or alternatively that the automatic stay be modified to permit such collection.

A number of hearings were scheduled on the Motion and Response. All of those hearings were ultimately continued at the request and with the consent of all the parties, and no substantive hearings on the Sanctions Motion or the Motion for Relief from Stay have ever been held. At a status conference set by the Court on January 10, 2017, the parties requested that the Court rule on the pending pleadings and submissions on the issue of whether the relevant award of attorneys' fees constitutes a "domestic support obligation" as defined in 11 U.S.C. § 101(14A). As part of that process, the Court directed the parties to file a stipulated set of facts regarding the award of the subject attorneys' fees. In response, on April 14, 2017, the parties submitted a *Joint Stipulation of Facts and Documents* including all the documents and pleadings that were submitted to the Superior Court (defined below) in consideration and reconsideration of the relevant award of attorneys' fees (Docket No. 83) (the "Joint Stipulation").

For the reasons that follow, this Court finds that the Respondents actions did not qualify for the exception to the automatic stay that they assert applied. Further, there is not cause to modify the automatic stay.

## BACKGROUND

Prior to the filing of this case, the Debtor and Skubic, who have never been married, were parties to a legitimation and child custody action, commenced by Skubic as the father of the Debtor's minor child, in the Superior Court of Fulton County, Georgia (the "Superior Court").

During the course of that action, the Superior Court entered several orders with regard to issues of paternity and parenting time. In the final order on paternity and parenting time (the "Parenting Order")(attached as "Exhibit A" to the Amended Response), the Superior Court required the parties to submit supplemental pleadings to the extent they were requesting an award of attorneys' fees (the "Fee Requests"). Both the Debtor and Skubic submitted letter briefs requesting same. See Exhibits "A" & "B" to the Joint Stipulation. Skubic sought attorneys' fees under both O.C.G.A. §§ 19-9-3[1] and 9-15-14[2], while the Debtor sought fees only under O.C.G.A. § 19-9-3. After evaluating their requests and submissions, the Superior Court awarded attorney's fees in the amount of $36,000.00 to be paid by the Debtor to Skubic's

---

[1] This statute provides, in pertinent part:

Except as provided in Code Section 19-6-2 [regarding types of custody actions not applicable in this case], and in addition to the attorney's fee provisions contained in Code Section 19-6-15 [child support], the judge may order reasonable attorney's fees and expenses of litigation…and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge.

O.C.G.A. § 19-9-3(g).

[2] This statute provides, in pertinent part:

(a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

(b) The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

(c) No attorney or party shall be assessed attorney's fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedential or persuasive authority.

O.C.G.A. § 9-15-14(a)-(c).

4

attorney (the "Fee Award").³ See *Order on Petitioner's Motion for Attorney's Fees* (the "First Order"), attached as Exhibit "C" to the Joint Stipulation.⁴ In the First Order, the Superior Court stated, *inter alia*, the following with respect to its ruling on attorney's fees:

> Considering the submissions filed by each party, the financial conditions of the parties, the pleadings, the evidence at trial, the outcome of the trial, the settlement offers made and the billing statements submitted on this issue, the Court finds attorney's fees to be appropriate, pursuant to O.C.G.A. Sec. 19-9-3.

First Order, at *1. Skubic subsequently filed a motion for contempt against the Debtor in the Superior Court on October 16, 2015, alleging that the Debtor had willfully failed to comply with the Superior Court's orders with respect to selecting childcare providers, and by denying Skubic parenting time, refusing to communicate with him, and failing to pay attorney's fees as awarded. See *Petitioner's Motion for Citation of Contempt against Respondent* (the "Contempt Motion"), attached as Exhibit "D" to the Amended Response.

Prior to being served with the Contempt Motion, the Debtor filed this case on November 16, 2015 (the "Petition Date"). In the Sanctions Motion, the Debtor asserted that she filed notice of the filing of this case in the Superior Court and served it on Collins, who was Skubic's attorney, on the Petition Date, and then also mentioned the filing to Skubic on November 17, 2015. Sanctions Motion at ¶ 6-8. The Debtor further asserted that she was contacted on November 24, 2015, by Shepherd, a process server, who was trying to coordinate a time and place to serve the Debtor with the Contempt Motion. Sanctions Motion at ¶ 9. The Debtor said

---

³ The Superior Court also ordered that the Debtor reimburse Skubic for one half (1/2) of the costs associated with supervised parenting visits, mediation, late case evaluation, and for the custody evaluator, though no specific dollar amount was provided in the First Order. See First Order, *passim*.

⁴ In response to a motion to reconsider and clarify, the Superior Court entered a second order on May 15, 2015, denying the Debtor's request to reconsider the Fee Award and clarifying the First Order in certain respects not material to this matter. See *Order on Respondent's Motion for Reconsideration of Award of Attorney's Fees* (the "Second Order"), attached as Exhibit "F" to the Joint Stipulation.

5

that she told Shepherd that she had filed for bankruptcy and that service of the Contempt Motion was not permitted.  Sanctions Motion at ¶ 9.  Nonetheless, the Debtor alleges that:

> Later in the day on November 24, 2015, the Debtor was approached by Respondent Shepherd as the Debtor was entering the Department of Motor Vehicles.  When the Debtor attempted to continue into the building, Respondent Shepherd assaulted the Debtor, thrust the [Contempt Motion] at her, and informed her that she had been served.  The Debtor then attempted to follow Respondent Shepherd in order to take a picture of her and her vehicle.  Respondent Shepherd got in her car and almost ran over the Debtor foot's in an attempt to leave the scene and avoid pictures. . . . During the assault, the Debtor heard her hip "pop" . . . . . After her hip popped, the Debtor was in extensive pain and could not bear weight on her leg.

Sanctions Motion at ¶ 11-12.  Finally, the Debtor alleged that Shepherd's actions caused her pain and suffering, and that she had to seek medical treatment and therefore incurred medical and other expenses.   Sanctions Motion at ¶ 12-13.  Thus, the core of this dispute is whether the Respondents, including Skubic, willfully violated the automatic stay in connection with Shepherd's service of the Contempt Motion on the Debtor after the filing of this case.

The Respondents have admitted that the Contempt Motion was served on the Debtor after this bankruptcy case was filed, and that they were aware of the filing at the time of service.  The Debtor asserts this service was a violation of the automatic stay of 11 U.S.C. § 362(a).  Respondents argue that the First Order explicitly states that the financial condition of the parties was a consideration in awarding fees, and therefore the Fee Award constitutes a "domestic support obligation" as defined in 11 U.S.C. § 101(14A) and service of the Contempt Motion was excepted from operation of the automatic stay pursuant to 11 U.S.C. § 362(b)(2)(B).[5]

---

[5] As to the balance of the relief sought in the Contempt Motion, Respondents rely on the exception to the stay provided in Section 362(b)(2)(A)(iii) with respect to the continuation of an action "concerning child custody or visitation."  Partial relief from the automatic stay, allowing Skubic to continue prosecution of the Contempt Motion as it relates to custody, parenting and visitation (but not as it relates to the Fee Award) and noting the applicability of that exception to those parts of the Contempt Motion, was provided by Order of this Court on May 24, 2016 (Docket No. 68).

6

The Debtor counters that, although the Superior Court refers to the "financial conditions of the parties" in the First Order, this Court cannot merely rely on such statement for two (2) reasons. First, the Debtor asserts that the Georgia statute cited by the Superior Court, O.C.G.A. § 19-9-3, does not require consideration of the parties' respective needs and ability to pay. See Viskup v. Viskup, 291 Ga. 103, 107, 727 S.E.2d 97 (2012). Without clear evidence of such a review, the Debtor asserts that it should not be presumed.

Second, the Debtor claims that, other than the Superior Court's statement in the First Order, there is no indication in the Superior Court record, and none has been presented herein, that the Superior Court actually considered any evidence of the financial condition of the parties other than their financial affidavits. See Domestic Relations Financial Affidavits (each, a "DRFA"), Skubic's DRFA on pp. 45-51 of the Joint Stipulation; Debtor's DRFA on pp. 53-63 of the Joint Stipulation. The Debtor further states that, even if the Superior Court reviewed the DRFAs, they show Skubic enjoyed a better economic position than the Debtor, so he could not have been in a position of need for purposes of the Fee Award. Thus, the Debtor urges this Court to examine the parties' respective financial means at the time of the Fee Award (as it was presented to the Superior Court) in evaluating Respondents' assertion, as a defense to the Sanctions Motion, that Skubic was collecting a "domestic support obligation."

Similarly, given that O.C.G.A. § 19-9-3 does not require such an inquiry, the Debtor contends any ambiguity in determining this issue due to the absence of support on the record should be construed against Respondents, as it is their burden to prove a viable defense to an allegation of violation of the automatic stay. See Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1556 (11th Cir. 1996).

## DISCUSSION[6]

Title 11 of the United States Code (the "Bankruptcy Code") provides that the automatic stay is imposed upon the filing of a bankruptcy case. 11 U.S.C. § 362(a).[7] Exceptions to the stay are set forth in 11 U.S.C § 362(b), which provides, in pertinent part:

> "(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970[15 U.S.C. § 78eee(a)(3)], does not operate as a stay-
>
> > (2) under subsection (a) -
> >
> > > (A) of the commencement or continuation of a civil action or proceeding -
> > >
> > > > (i) for the establishment of paternity;
> > > >
> > > > (ii) for the establishment or modification of an order for domestic support obligations;
> > > >
> > > > (iii) concerning child custody or visitation . . .
> > >
> > > (B) of the collection of a domestic support obligation from property that is not property of the estate . . . ."

11 U.S.C. § 362(b)(2)(A)(i)-(iii) & (B).

The Bankruptcy Code defines a domestic support obligation (a "DSO") as:

> "(14A) [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under

---

[6] This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this Court under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

[7] 11 U.S.C § 362(a) provides, in pertinent part:

> "(a) [A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor ...;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title

>applicable nonbankruptcy law notwithstanding any other provision of this title, that is-
>
>>(A) owed to or recoverable by-
>>
>>>(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>>
>>>(ii) a governmental unit;
>>
>>(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>>
>>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>>
>>>(i) a separation agreement, divorce decree, or property settlement agreement;
>>>
>>>(ii) an order of a court of record;
>>>
>>>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>>
>>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt."

11 U.S.C. § 101(14A).

The question before the Court is whether an exception to the automatic stay applies to the service of the Contempt Motion on the Debtor. Under the applicable law as set forth above, the question boils down to the following: if the Fee Award is a DSO, then the service of the Contempt Motion may have been excepted from the automatic stay of 11 U.S.C. § 362(a)

9

pursuant to 11 U.S.C. § 362(b)(2)(B).[8] Conversely, if the Fee Award is not a DSO, then the service of the Contempt Motion was not excepted from the stay. Because the question of whether the Fee Award is a DSO is obviously critical to the foregoing analysis, the parties have requested the Court to decide it at this time.

*The Fee Award Is Not A DSO*

In this case, it is undisputed that the Fee Award (i) is owed to the parent of a child of the Debtor; (ii) was established by a prepetition order from the Superior Court; and (iii) is not assigned to a non-governmental entity. Thus, the only open question in determining whether the Fee Award is a DSO is whether the Fee Award is "in the nature of alimony, maintenance, or support" of Skubic or his child with the Debtor. The standard for whether attorneys' fees are in the nature of alimony, maintenance, or support has been addressed by the United States Court of Appeals for the Eleventh Circuit. See Strickland v. Strickland (In re Strickland), 90 F.3d 444 (11th Cir. 1996).[9]

Federal law, not state law, controls whether an award is "in the nature of alimony, maintenance, or support", as used in the Bankruptcy Code. Strickland, 90 F.3d at 446.

---

[8] The Respondents asserted in their Response that 11 U.S.C. §362(b)(2)(B) applied to their activities. In response, the Debtor has only asserted that Fee Award is not a DSO. No party in any pleading has addressed how Respondents' actions were an effort to collect only from property that is not property of the estate (presumably the Debtor's post-filing wages and property abandoned by the Chapter 7 trustee), which is the second element of §362(b)(2)(B). Had the Court determined that the Fee Award was a DSO, this failure of proof might nevertheless have proved fatal to Respondents' proposed defense, as the Respondents have the burden of proof as to their defense, Jove Eng'g, Inc., 92 F.3d at 1556, and have provided no proof on this issue.

[9] Although Strickland was decided under a prior version of 11 U.S.C. § 523(a)(5), the analysis of what is "in the nature of alimony, maintenance or support" for the purposes of the definition of a "domestic support obligation" under 11 U.S.C. § 101(14A) should be the same as the analysis that the 11th Circuit applied to those same words in Strickland and its other cases under the prior version of 11 U.S.C. § 523(a)(5). Although the prior version of 11 U.S.C. § 523(a)(5) contained the word "actually" before the applicable phrase, and 11 U.S.C. § 101(14A)(B) does not, 11 U.S.C. § 101(14A)(B) finishes with the additional phrase "without regard to whether such debt is expressly so designated", which has the same effect on the applicable phrase as "actually" had on it in the prior version of 11 U.S.C. § 523(a)(5).

Therefore, even if, under state law, an award is couched as one that is in the nature of alimony, maintenance or support, that determination is subject to examination in a bankruptcy case under federal law.  The Eleventh Circuit held that whether an award of attorneys' fees constitutes support is a "simple inquiry" that "requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is 'actually in the nature of alimony, maintenance, or support.'"  Id. (quoting Harrell v. Sharp (In re Harrell), 754 F.2d 902, 906 (11th Cir. 1985)).  The Bankruptcy Code also explicitly provides that the label given to such an award in a court order is not determinative.  11 U.S.C. § 101(14A)(B) (" . . . without regard to whether such debt is expressly so designated").

However, any attempt to expand the analysis into "an assessment of the ongoing financial circumstances . . . would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts."  Strickland, 90 F.3d at 447 (quoting Harrell, 754 F.2d at 907).  Though the role envisioned for the bankruptcy court does permit some level of review, the Court should not embark upon its own investigation into the parties' finances without proper justification.  If the facts of a case make it clear that the related state court award is in the nature of alimony, maintenance or support, then a bankruptcy court should not conduct any further review.  Conversely, if there is ambiguity in the state court order, or the facts of the case do not otherwise seem to support such a characterization, then a limited review is warranted.

In this case, the First Order lists multiple factors that were considered by the Superior Court in granting the Fee Award, only one of which was the relative financial needs of the parties, and the Superior Court did not specify the weight that it gave to the various factors. Further, the statute to which the Superior Court cited for support of the Fee Award, O.C.G.A.

§ 19-9-3, does not require an evaluation of the relative financial condition of the parties or base entitlement to the award on such an evaluation. Therefore, based on the ambiguity in the Fee Award, and the requirements of the statute supporting it, this Court will conduct a limited review to determine if the Fee Award is really in the nature of alimony, maintenance, or support.

As set forth in Strickland, this Court must conduct a "simple inquiry" into whether the attorneys' fees award in this case is truly in the nature of alimony, support, or maintenance. In the Joint Stipulation, the parties submitted the pleadings and exhibits that were submitted to the Superior Court for its consideration of the Fee Award. Included in those submissions was a DRFA disclosing each party's gross and net income and all assets owned in each party's name. Neither the Debtor nor the Respondents have asserted that the information contained in any of the DRFAs is inaccurate or incomplete, or that any other financial information was submitted to the Superior Court.

According to Skubic's DRFA, he had gross income of $6,500 per month, net monthly income of $4,420, and monthly expenses averaging $4,307. Additionally, Skubic had $240,000 in stocks and bonds, $13,800 in an IRA, and $11,000 in a checking account. He also owned real property with a fair market value of $230,000 and $77,000 in net equity, as well as a 2007 Toyota 4Runner with a fair market value of $14,000 and a 1985 BMW 535i with a fair market value of $2,000, as well as $6,000 worth of miscellaneous assets. Skubic's overall net worth was $363,800. See Joint Stipulation, at *45-51. Through the Superior Court litigation, Skubic incurred $118,106.73 in attorneys' fees and $28,178.15 in costs, including drug tests (all showing negative results) and supervision fees that the Debtor required, plus costs for the court-

12

ordered custody evaluation, mediation, and late case evaluation. The fees and expenses incurred by Skubic totaled $146,284.88. See Joint Stipulation, at *72.

By comparison, according to the Debtor's DRFA, she had gross income of $6,044 per month, net monthly income of $4,678, and monthly expenses averaging $6,567. She had $15,000 in a 401(k), $4,000 in an I.R.A., and $30,000 in checking and savings accounts. She also owned real property with a fair market value of $340,000 and $41,000 in net equity, as well as a 2005 Nissan Murano with a fair market value of $6,000. The Debtor's overall net worth was $96,000. See Joint Stipulation, at *53-61. Through the Superior Court litigation, the Debtor incurred $114,027.34 in total attorneys' fees and expenses. See Joint Stipulation, at *6.

Based on the above information, the Debtor and Skubic have very similar incomes. They both incurred similar amounts of attorneys' fees. The Debtor pays about $2,000 more a month in expenses, and Skubic has approximately $267,800 more in net assets than the Debtor. Although the Superior Court did recite that it considered the financial condition of the parties, it does not appear that ordering the Debtor, who has greater expenses and less assets than Skubic, to pay a portion of Skubic's attorneys' fees could possibly have been based on the financial needs of Skubic or the minor child.[10] Rather, as is set forth in the First Order, the Court also considered other things, including the submissions by the parties, the pleadings, the evidence at trial, the outcome of the trial, the settlement offers made and the billing statements submitted on this

---

[10] Because Skubic and the Debtor had never been married, and the Superior Court action was not a divorce but a legitimization action involving their child, the Debtor would not have had any legal obligation to support Skubic, making it extremely unlikely that the Fee Award constitutes support for Skubic. It is also extremely unlikely that the Fee Award was made in support of the child, since the Debtor has primary custody of the child under the Parenting Order, and thus taking money from her to give to Skubic, who was in a better financial position than the Debtor at the time of the award, could not in any obvious way benefit the child.

13

issue, and it appears that those matters, rather than any notion of support, resulted in the Fee Award.

In the Superior Court, Skubic was seeking attorneys' fees under both O.C.G.A. § 19-9-3 <u>and</u> O.C.G.A. § 9-15-14. That latter statute provides attorneys' fees where a party brings or defends an action lacking substantial justification, *i.e.*, as a sanction for frivolous or wrongful conduct. Although Skubic's letter brief asserted that attorneys' fees were proper under both O.C.G.A. §§ 19-9-3 and 9-15-14, only one (1) paragraph of his brief, including only a quote of O.C.G.A. § 19-9-3, addressed his request for attorneys' fees under that section. By contrast, four (4) pages of his brief were devoted to setting forth the misconduct of the Debtor and the allegedly frivolous pleadings and positions taken by the Debtor[11] that warranted attorneys' fees pursuant to O.C.G.A. § 9-15-14.[12]

Based on the above, this Court finds that the First Order is unclear as to how much weight the Superior Court gave to consideration of the relative financial needs of the Debtor and Skubic, and whether that award was in any way intended as support. Although the Superior Court stated that it had taken into account the financial condition of the parties, financial condition was one of many factors that the Superior Court listed as consideration for the Fee

---

[11] Skubic asserted that the Debtor had required supervised visits despite no court order requiring same and a recommendation from the court-appointed doctor, Dr. Michelle Green, who evaluated custody, that Skubic be allowed unsupervised visits. Skubic further complained that Dr. Green had recommended that Skubic be allowed one 24-hour parenting period per week during the first three (3) months, and increasing to three 48-hour periods per month. Skubic had proposed such parenting plan to the Debtor on March 14, 2014. Then, on April 11, 2014, Skubic asserts that the Debtor unilaterally decided that Skubic was not entitled to any overnight parenting periods, forcing Skubic to file a motion for emergency hearing on temporary custody and parenting time. Pursuant to that motion, the Superior Court ordered the parties to attend "Late Case Evaluation." Skubic finally complained that the parties agreed upon a co-parenting counselor, David Alexander, but when Mr. Alexander was contemplating allowing Skubic to take the child for 72 hours to attend a wedding, the Debtor stopped paying her portion of Mr. Alexander's fees.

[12] The notion that the Fee Award was made as a sanction is further supported by the provision, in a footnote to the paragraph of the Parenting Order that permitted the parties to request attorneys' fees, expressly shortening the period for requesting such fees under O.C.G.A. § 9-15-14. *See* Parenting Order, p. 12, fn. 8.

Award.  Unfortunately, the Superior Court did not provide further detail as to how much weight was given to any one factor.  The ambiguity is heightened because the statute pursuant to which the Fee Award was expressly made does not itself require consideration of the financial condition of the parties in making an award, nor does it condition an award on the needs of the recipient.

Because the First Order is unclear as to how much consideration was given to the financial needs of the parties, and because the underlying statute did not even require the Superior Court to consider such, pursuant to <u>Strickland</u> and 11 U.S.C. § 101(14A), this Court makes its own determination as to whether the Fee Award is a DSO.  Based on this Court's own simple inquiry into what the Superior Court considered in making the Fee Award, it appears that the Superior Court must have given great weight to the other factors it mentioned, which would include the numerous instances of wrongful conduct by the Debtor asserted by Skubic, and therefore this Court finds that the Fee Award is primarily a sanction for the Debtor's conduct, was not in the nature of alimony, maintenance, or support, and is thus not a DSO.  Consequently, 11 U.S.C. § 362(b)(2)(B) did not apply to the service of the Contempt Motion to the extent it sought payment of the Fee Award by the Debtor.[13]

*No Cause to Grant the Motion for Relief from Stay*

In the Motion for Relief from Stay, Skubic is seeking, *inter alia*, an order confirming that prosecution of the Contempt Motion as related to collection of the Fee Award is excepted from

---

[13] Nothing in the foregoing constitutes a determination that the Debtor is entitled to an award of sanctions or damages in connection with such actions, an issue that the Court expressly reserves.  Without ruling on any such issues, which are not presently before the Court, the possible good faith belief by the Respondents that several stay exceptions applied to the service of the Contempt Motion on the Debtor, together with causation issues arising from the Debtor's own actions after having been served with the Contempt Motion (as described in the Sanctions Motion) are among the issues that would have to be overcome by the Debtor before the Court could consider any such award.

the automatic stay for the same reasons asserted in the Response. Because this Court finds that the Fee Award does not constitute a DSO, no valid cause is set forth in the Motion for Relief from Stay to modify the automatic stay to allow Skubic to attempt to collect the Fee Award outside of this bankruptcy case.

Accordingly, for the reasons set forth above, it is

**ORDERED** that 11 U.S.C. § 362(b)(2)(B) did not apply to the service of the Contempt Motion to the extent it sought payment of the Fee Award by the Debtor. It is further

**ORDERED** that the Motion for Relief, to the extent not already granted pursuant to this Court's Order of May 23, 2016 (Docket No. 68), is **DENIED**. It is further

**ORDERED** that the Court will hold a status conference with regard to the Motion for Sanctions and the Motion for Protective Order and to Quash Subpoena (Docket No. 51) on **August 23, 2017 at 1:30 p.m.** in **Courtroom 1202** at the **Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive S.W., Atlanta Georgia 30303.**

The Clerk's Office is directed to serve a copy of this Order upon the Debtor, counsel for the Debtor, Respondents, counsel for Respondents, the Chapter 7 Trustee, and the acting United States Trustee.

**[END OF DOCUMENT]**